**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 19, 2012**

# In the Court of Appeals of Georgia

A12A1626. GROT v. CAPITAL ONE BANK (USA), N. A.

MILLER, Judge.

Capital One Bank (USA) Bank, N. A. ("the Bank") filed suit against John B. Grot to recover an unpaid debt on an open account. Grot, appearing pro se, filed a "Motion to Dismiss and Compel Arbitration." The trial court denied the motion to dismiss, but entered an order staying the suit and granting Grot's unopposed motion to compel arbitration. The stay order, however, was subsequently vacated when arbitration was not timely pursued. The trial court overruled Grot's objections to the stay order and did not grant Grot's subsequently filed motion for reconsideration on the matter. The Bank filed a motion for summary judgment, which the trial court granted. Grot appeals, contending that the trial court erred (1) in denying his "Motion to Dismiss and Compel Arbitration;" (2) in entering the Bank's proposed stay order;

(3) in failing to grant his motion for reconsideration of the stay orders; (4) in failing to conduct a scheduling hearing; (5) in failing to schedule oral arguments on the motion for summary judgment; and (6) in granting the motion for summary judgment. For the reasons that follow, we affirm.

> Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.

(Footnote omitted.) *Melman v. FIA Card Svcs., N.A.*, 312 Ga. App. 270 (718 SE2d 107) (2011).

The record evidence in this case shows that the Bank filed the instant collection action against Grot, alleging that Grot was liable for the repayment of a debt in the amount of $8,728.67 in principal, $3,753.01 in accrued interest, and $257.50 in court costs. As part of the suit, the Bank also provided notice under OCGA § 13-1-11 (a) (3) that it intended to enforce the provisions of the parties' "Customer Agreement" (the "cardholder agreement") providing for all collection costs, including attorney fees, and that Grot would be liable for $1,273.17 in attorney fees unless payment in full was tendered within ten days from Grot's receipt of the complaint and notice.

2

Grot filed an answer generally denying his liability and the amount of the debt. Grot also filed a motion to dismiss the case and to compel arbitration, electing to enforce the arbitration provisions of the cardholder agreement. The Bank opposed dismissal of the case, but stated that it had no objection to a stay so that Grot could initiate arbitration proceedings as authorized by the cardholder agreement. The Bank presented a proposed order granting a stay of the case, further mandating that Grot would have 30 days to file an arbitration action, and providing that the case would be reinstated if Grot failed to comply with the time limitation for pursuing arbitration. On September 28, 2011, the trial court denied Grot's motion to dismiss, but entered the Bank's proposed order staying the case for arbitration. On December 1, 2011, after arbitration was not pursued within the mandated 30-day period, the trial court vacated the stay order and reinstated the case.

The Bank thereafter filed a motion for summary judgment, asserting that the undisputed evidence established Grot's liability for the liquidated amount of the debt. To support its motion, the Bank submitted the affidavit of its authorized agent, who averred that she had personal knowledge of the Bank's manner and method of maintaining its accounts receivable and business records; the Bank's records were kept in the ordinary course of business and record entries were made at the time of

the transaction; the records showed that Grot applied for and was issued a credit card account by the Bank; the Bank issued the cardholder agreement, which delineated the terms and conditions of the account; Grot proceeded to make charges on the account and was provided with monthly account billing statements setting forth the account activity and requesting payment; and that Grot defaulted by failing to make payments, which resulted in an unpaid principle balance owed of $8,728.67, interest accruing at the applicable statement rate of 19.08% in the amount of $3,753.01, and reasonable attorney fees of $1,273.17. Copies of the cardholder agreement and the monthly account billing statements were included as exhibits to the affidavit. In addition, the Bank's motion attached an offer agreement executed by Grot as the "Authorizing Signatory" on November 10, 2001, reflecting that he was the President of International Consultants of GA ("the Company"). Above the signature line for acceptance of the offer agreement was a provision stating in pertinent part, "I have read the Important Disclosures and Terms of Offer on the back of the letters. . . and I agree on behalf of the Company and myself that the Company and I will be bound as specified therein."

In response to the Bank's motion, Grot generally denied the claims, contending that the cardholder agreement was "not a factual document pertaining to th[e] [c]ase,"

4

that he was not personally liable for the debt, and that the amount due was in dispute. Grot also filed a motion for reconsideration of the stay orders, contending that he was never served with the signed orders. Grot filed a "Request for a Scheduling Hearing," which asserted that "there are a significant number of issues that need to be reviewed and/or heard by the Court in oral arguments."

The trial court entered an order overruling Grot's objection to the stay orders. The trial court granted the Bank's motion for summary judgment. Grot filed the instant appeal to challenge the trial court's decisions.

1. Grot contends that the trial court erred in denying his "Motion to Dismiss and Compel Arbitration." We discern no error.

Contrary to Grot's contention, the trial court granted his motion for arbitration and granted a stay of the action to allow arbitration proceedings to be initiated. The record establishes that the Bank did not oppose Grot's motion for arbitration, and pointed out that the parties' cardholder agreement contained an arbitration clause that gave either party the option to elect arbitration as a means to resolve the dispute. The arbitration clause pertinently stated that "[Grot or the Company] or [the Bank] may *elect* arbitration . . . with respect to any [c]laim, *even if the [c]laim is part of a lawsuit brought in court.* [Grot or the Company] or [the Bank] may make a motion or request

5

in court to compel arbitration of *any [c]laim brought as part of any lawsuit.*"
(Emphasis supplied.) The emphasized language of the arbitration clause reflects that
arbitration was optional rather than mandatory, and the filing of a lawsuit was
authorized notwithstanding the fact that the claim was arbitrable. The arbitration
clause further provided that it was "made pursuant to a transaction involving
interstate commerce and shall be governed by and enforceable under the Federal
Arbitration Act ("FAA")." Section 3 of the FAA provides in part that

> [i]f any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in
> writing for such arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such suit or proceeding
> is referable to arbitration under such an agreement, shall on application
> of one of the parties stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement[.]

9 U.S.C. § 3. In accordance with the procedure set forth under the FAA, the trial
court's decision to stay the pending suit to allow the parties the opportunity to
proceed to arbitration based upon the parties' agreement was proper. Cf. *GF/Legacy
Dallas, Inc. v. Juneau Constr. Co., LLC*, 282 Ga. App. 14, 16-17 (637 SE2d 511)
(2006) (ruling that the trial court was required to stay the action when the claim was
referable to arbitration under the parties' agreement); *H.R.H. Prince &c. v.*

6

*Batson-Cook Co.*, 161 Ga. App. 219, 222 (3) (b) (291 SE2d 249) (1982) (ruling that "[s]ince the trial court correctly ordered arbitration, the correct procedure is to stay judicial proceedings in the . . . action and proceed to arbitration."). It thus follows that the trial court did not err in granting a stay, rather than a dismissal, while affording Grot an opportunity to pursue arbitration.

2. Grot asserts that the trial court erred in entering the Bank's proposed stay order without affording him "the normal 30 day period" to respond to the proposed order and causing him to be responsible for the filing fees associated with the arbitration. Again, no basis for reversal has been shown.

The record shows that on September 28, 2011, the Bank filed its response consenting to Grot's motion for arbitration, along with a proposed order staying the action for arbitration for the trial court's consideration. On that same date, the trial court entered the Bank's proposed order. Several days later, on October 3, 2011, Grot filed an objection to the Bank's proposed order. Grot's objection did not contest the proposed order's provisions for arbitration; rather, Grot argued that the lawsuit was required to be dismissed. Thereafter, the trial court overruled Grot's objection to the order.

7

As an initial matter, Grot has cited no legal support for his contention that the trial court should have afforded 30 days for his response to the proposed order. But even if Grot did not receive sufficient notice of the proposed order prior to its entry, the alleged error was harmless.

> Even when a trial court adopts a proposed order verbatim, the findings of fact therein are those of the court and may be reversed only if they are clearly erroneous. *Anderson v. City of Bessemer City*, 470 U. S. 564, 572 (II) [(105 SC 1504, 84 LE2d 518)] (1985)[.] . . . Orders prepared ex parte do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair.

(Citations and punctuation omitted.) *Fuller v. Fuller*, 279 Ga. 805, 806 (1) (621 SE2d 419) (2005). Here, Grot requested the opportunity to arbitrate the dispute, the Bank did not oppose his request, and the trial court entered the proposed order granting him the relief that he had requested. Notably, the parties did not raise any question as to which party would be responsible for paying the filing fee associated with initiating the arbitration proceedings.[1] Nor did the trial court's order address the issue. As such,

---

[1] The cardholder agreement provided that "[t]he party initiating arbitration [would] pay the initial filing fee," but that the party could "seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, 'Administrator's Fees') under any applicable rules of the Administrator." The cardholder agreement

Grot's arguments have failed to show that the proposed order was clearly erroneous or resulted from a fundamentally unfair process.

3. Grot further argues that the trial court erred in failing to grant his motion for reconsideration of the stay orders. He asserts that the orders should have been vacated since he was not served with copies of the orders upon their execution and entry by the trial court.[2]

The Bank argues that it served its pleadings and proposed orders upon Grot, and that it was the trial court's duty to notify the parties of its decision after the orders were entered pursuant to OCGA § 15-6-21 (c).[3] Notwithstanding any question regarding who bore the duty to ensure service of the trial court's orders upon their entry, Grot has failed to show that the alleged error was harmful in this case. The

---

further provided procedures for requesting that the Bank pay or reimburse all or part of the Administrator's fees.

[2] We note that Grot attaches several exhibits to his appellate brief that cannot be considered in our review. "Documents attached to an appellate brief, which have not been certified by the clerk of the trial court as a part of the appellate record and forwarded to this Court, shall not be considered on appeal." *Court of Appeals Rule 24 (g)*.

[3] OCGA § 15-6-21 (c) pertinently provides that "[w]hen he or she has so decided, it shall be the duty of the judge to file his or her decision with the clerk of the court in which the cases are pending and to notify the attorney or attorneys of the losing party of his or her decision."

initial stay order favorably granted Grot's request for arbitration. Although the subsequent order vacated the stay due to the failure to timely initiate the arbitration proceedings, Grot did not request that the order be vacated to allow him additional time to pursue arbitration.[4] Rather, Grot's only challenge to the stay orders was based upon his desire that the lawsuit be dismissed instead of stayed. As explained in Divisions 1 and 2 herein, the basis for Grot's challenge to the stay orders was meritless. Moreover, since Grot was afforded the opportunity to challenge the merits of the stay orders during the trial court's proceedings and in this appeal, and his challenges present no basis for reversal, no harm has been shown from the alleged error. Cf. *Glennco, Inc. v. Silver Shoes, Inc.*, 164 Ga. App. 30, 31-32 (295 SE2d 357) (1982) (concluding that the appellant failed to present any grounds for reversal and the trial court properly exercised its discretion in refusing to set aside a judgment when the party claimed that he had no notice of the court's published calender); see generally, *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992) ("An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful.").

---

[4] It is undisputed that Grot received the proposed order containing the 30-day time limitation for initiation of the arbitration proceedings, and he did not object to the time limitation.

4. Grot next argues that the trial court erred in failing to conduct a "scheduling hearing" or conference pursuant to his request. Again, no error has been shown.

Grot has not pointed to any legal authority that required the trial court to conduct a "scheduling hearing" or conference in this civil action. We note that "[i]t is error to refuse to grant a pre-trial hearing and order pursuant to [OCGA § 9-11-16 (a)] where a timely motion to this effect has been entered." (Citation omitted.) *Kickasola v. Jim Wallace Oil Co.*, 144 Ga. App. 758, 761-762 (11) (242 SE2d 483) (1978). Significantly, however, Grot's request for a "scheduling hearing" does not appear to be a request for a pretrial conference leading toward the preparation of a pretrial order under OCGA § 9-11-16. Grot did not request the entry of a pretrial order; rather, he "request[ed] that the [trial] [c]ourt set a date for a Scheduling Conference with both the [p]laintiff and the [d]efendant and their respective attorneys" and reflected that "there [were] a significant number of issues that need[ed] to be reviewed and/or heard by the [trial] [c]ourt in oral arguments." Since Grot has failed to show that a "scheduling hearing" or conference was mandated, his claim presents no basis for reversal. Cf. *Velasco v. Chambless*, 295 Ga. App. 376, 377 (1) (671 SE2d 870) (2008) (concluding that the trial court's scheduling order was not intended as a pretrial order governed by OCGA § 9-11-16 (b)).

11

This Court recognizes the difficulty that the trial courts face in attempting to decipher ambiguous pro se pleadings. "While it is true that pro se pleadings are held to less stringent standards than pleadings that are drafted by lawyers, it is not the trial court's responsibility to make out a pro se party's case, or to rewrite an otherwise deficient pleading in order to sustain an action." (Citations, punctuation, and footnotes omitted.) *Campbell v. McLarnon*, 265 Ga. App. 87, 90 (2) (593 SE2d 21) (2003). The trial court did not err by failing to read Grot's request for a "scheduling hearing" as a request for a pretrial conference and pretrial order.

5. Grot further contends that the trial court erred in failing to schedule oral arguments on the motion for summary judgment.

"[O]ral argument on a motion for summary judgment shall be permitted upon written request made in a separate pleading bearing the caption of the case and entitled 'Request for Oral Hearing'[.]" (Punctuation omitted.) Uniform Superior Court Rule 6.3. "We have held before that the failure to hold a hearing on a motion for summary judgment is not error if the party requesting a hearing fails to comply with Uniform Superior Court Rule 6.3, which requires that any such request be made by a separate and distinct pleading." (Citation omitted.) *Windham & Windham, Inc. v. Suntrust Bank*, 313 Ga. App. 841, 844 (2) (723 SE2d 70) (2012). Here, Grot did not

12

file a separate and distinct pleading to request an oral hearing. Rather, his request was buried in his response to the Bank's motion for summary judgment.[5] Grot's status as a pro se litigant does not relieve him of the obligation to comply with the substantive and procedural requirements of the law, including the court rules. See *Woods v. Hall*, 315 Ga. App. 93, 95 (726 SE2d 596) (2012); see also *Campbell*, supra, 265 Ga. App. at 90 (2) (a trial court is not required to rewrite an otherwise deficient pleading in order to sustain an action). Since Grot failed to comply with the requirements of the court rule, the trial court did not err when it failed to conduct oral arguments on the motion for summary judgment. See *Windham & Windham, Inc.*, supra, 313 Ga. App. at 844 (2).[6]

---

[5] Otherwise, Grot filed a "Request for a Scheduling Hearing" seeking a "Scheduling Conference" with the parties. Grot challenges the denial of his request for a scheduling hearing in a separate enumeration of error, which has been addressed in Division 4 above. Grot's ambiguous request for a "scheduling hearing" likewise did not comply with the requirements of Uniform Superior Court Rule 6.3 for requesting an oral hearing on the motion for summary judgment.

[6] Although the trial court was not required to allow oral arguments on the motion for summary judgment in the absence of a request compliant with Uniform Superior Court Rule 6.3, we nevertheless note that it may have been prudent and beneficial for the trial court to hear oral arguments in this case. Perhaps a hearing would have allowed the parties an opportunity to more clearly define and address the issues that existed in this matter.

6. Lastly, Grot contends that the trial court erred in granting the Bank's motion for summary judgment. Contrary to Grot's contention, no error has been shown.

Summary judgment is proper when the pleadings and evidence show that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c); *Melman*, supra, 312 Ga. App. at 270. "Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." (Punctuation and footnote omitted.) *Elwell v. Keefe*, 312 Ga. App. 393, 394-395 (718 SE2d 587) (2011).

In support of its debt collection claim, the Bank presented the affidavit of its agent, whose averments, as fully set forth above, laid a proper foundation for admission of the Bank's business records and account entries. See *Melman*, supra, 312 Ga. App. at 271-272 (1) (a). The Bank's motion and affidavit also attached copies of the cardholder agreement, account billing statements, and the offer agreement executed by Grot as the "Authorizing Signatory." The affidavit and the attached documents reflected that the charges and fees incurred on the account amounted to $8,728.67, with interest accruing at the applicable statement rate of 19.08% in the amount of $3,753.01. The cardholder agreement also provided for the Bank's

14

recovery of all collection costs, including attorney fees. The Bank had provided the requisite notice for the collection of $1,273.17 in attorney fees under OCGA § 13-1-11 (a) (2), (3). See *Upshaw v. Southern Wholesale Flooring Co.*, 197 Ga. App. 511, 513-514 (4) (398 SE2d 749) (1990); *Gen. Elec. Credit Corp. of Ga. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596) (1978). The above evidence established the existence of the debt.

Significantly, although the Bank's evidence clearly established that the debt was owed, Grot argued that the evidence failed to establish that he was personally liable as the debtor. In denying that he was personally liable for payment of the account, Grot pointed to evidence that the account was in the name of the Company, International Consultants of GA.[7]

Generally, a corporation's officers and the corporation are entirely separate and distinct entities. See *Elwell*, supra, 312 Ga. App. at 395. "Contracts may be signed by one acting in a representative capacity, or a representative may make himself liable

---

[7] The Bank's suit was filed against Grot personally, and the Bank made no reference to the Company or Grot's representative capacity. Neither the Bank's appellate brief, nor the affidavit upon which it relied to establish the debt, point to any provisions in the parties' written agreements addressing the issue as to whether Grot could be held personally or individually liable for the debt. The cardholder agreement contained in the appellate record is in barely legible small print, which places this Court at a disadvantage in attempting to decipher the applicable terms.

15

for the debt of the corporation; this Court examines the language of the contract to determine in what capacity the representative is bound." (Punctuation and footnotes omitted.) Id. The offer agreement that Grot executed referenced the Company, and reflected that he was the President of the Company. The offer agreement further affirmed as follows:

> "I have read the Important Disclosures and Terms of Offer on the back of the letters. . . and I agree on behalf of the Company and myself that the Company and I will be bound as specified therein."[8]

Although the offer agreement referred to Grot using the terms of "I" and "myself," it is unclear whether Grot was being referred to in his corporate representative capacity or in his personal capacity. Neither the title nor the body of the offer agreement clearly express whether Grot was executing a personal guaranty of the debt, or whether he was executing the agreement in his representative capacity or in his personal capacity.

---

[8] The "Important Disclosures and Terms of Offer" referenced in the offer agreement have not been included in the record, and thus, we are unable to determine whether those disclosures and terms required Grot to be a co-debtor or personal guarantor of the debt.

16

Nevertheless, the cardholder agreement stated as follows: "In this Agreement, the words 'you,' 'your,' and 'yours' refer to each person who signed the application for the account . . . and to anyone else who is authorized to use the account in any way. *Except as specifically stated herein, each of you is individually and jointly obligated under this Agreement.*" (Emphasis supplied.) The cardholder agreement further stated that "You promise to pay . . . and are liable for all amounts due resulting from the authorized use of your card or account, including any finance charges or other charges due under the terms of this Agreement." To the extent that Grot signed the offer agreement, whether in his personal or corporate capacity, he agreed to be individually and jointly liable for the debt under the cardholder agreement.[9] See *Upshaw,* supra, 197 Ga. App. at 513 (3) ("Even though one is acting in the capacity of agent and for the sole benefit of his principal, he may nevertheless by express undertaking bind himself personally.") (citations and punctuation omitted.) Since the language employed in the cardholder agreement reflects that Grot agreed to be individually and joint liable for the debt, the trial court did not err in granting summary judgment in favor of the Bank. Id.

---

[9] Grot failed to show that an exception to individual and joint liability applied in this case.

17

*Judgment affirmed. Ray and Branch, JJ., concur.*