**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 19, 2014**

# In the Court of Appeals of Georgia

A14A0209.  BUFFA  v.  YELLOWBOOK  SALES  AND DISTRIBUTING CO., INC.

MILLER, Judge.

Yellowbook Sales and Distributing Company, Inc., ("Yellowbook") filed suit against Arctic Polar Heating and Air, LLC, ("Arctic Polar") and John Buffa to recover amounts owed on four different advertising contracts. Following a bench trial, the trial court found in favor of Yellowbook and awarded damages, attorney fees, and interest. Buffa appeals,[1] contending that he was not personally obligated under the relevant contracts because he signed them in his representative capacity. For the reasons that follow, we affirm.

---

[1] The trial court also awarded damages against Arctic Polar totaling approximately $176,401.79. Arctic Polar does not appeal the verdict and judgment entered against it.

On appeal from the entry of judgment in a bench trial, we view the evidence in the light most favorable to the trial court's verdict and affirm the trial court's findings if there is any evidence to support them. *Cox Interior, Inc. v. Bayland Properties, LLC*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008).

So viewed, the evidence shows that Buffa formed Arctic Polar in January 2005 and its principal place of business is located at 735 Hembree Place in Roswell, Georgia. Between April 2005 and April 2006, Buffa executed four different contracts in his individual capacity and on behalf of Arctic Polar for print and Internet advertising with Yellowbook. Three of the contracts were for advertising in the Atlanta metro region or surrounding areas, while the fourth contract was for advertising in Florida. The contracts were billed at a monthly rate.

The signature block for the four contracts read as follows:

THIS IS AN ADVERTISING CONTRACT BETWEEN YELLOW BOOK

AND

_____

_____ and
Print Company Name


X_____

_____ Authorized Signature Individually and for the Company
(Read Clause 15F on reverse side) Title

_____

Print Signer's Name § # (required for new contracts or new signer)  Date

Clause 15F of the agreement states, "The signer of this agreement does, by his execution personally and individually undertake and assume the full performance thereof including payments of amounts due thereunder." Buffa signed in the signature block and printed his name underneath. On two of the contracts, Buffa included his title as president of Arctic Polar next to his signature.

Yellowbook then sent invoices to Arctic Polar for the amounts due. The invoices were mailed to the Roswell address on file and marked to Buffa's attention. Arctic Polar made some payments, but did not pay the full balance due on the invoices. Yellowbook then filed the instant lawsuit.

According to Yellowbook's corporate representative, Buffa owed the company a principal amount of $96,153.10. Since the contracts also authorized Yellowbook to charge a 1.5-percent late fee if payment was not received within 30 days, Yellowbook's representative calculated that Buffa owed an additional $53,364.97 in late fee interest. Following a bench trial, the trial court found in favor of Yellowbook and awarded damages against Buffa in the principal amount of $99,795.10, along

3

with $14,422.97 in attorney fees and $53,364.97 in pre- and post-judgment interest on late fees.

On appeal, Buffa does not challenge the existence of a debt incurred by Arctic Polar for Yellowbook advertising.[2] Rather, Buffa contends that he was not personally obligated under the Yellowbook contracts because he was not a party to the contracts and the contracts did not satisfy the Statute of Frauds to be enforceable as a personal guaranty. We disagree.

> Generally, a corporation's officers and the corporation are entirely separate and distinct entities. Contracts may be signed by one acting in a representative capacity, or a representative may make himself liable for the debt of the corporation; this Court examines the language of the contract to determine in what capacity the representative is bound.

(Citations and punctuation omitted.) *Grot v. Capital One Bank (USA), N.A.*, 317 Ga. App. 786, 794 (6) (732 SE2d 305) (2012). When construing the language of a contract, we follow a three-step process,

> first determining if the contract language is clear and unambiguous. When a contract contains no ambiguity, the court simply enforces the contract according to its clear terms; the contract alone is looked to for

---

[2] To establish a prima facie case for a complaint on an account, the plaintiff must tender an authenticated invoice, along with testimony that the invoice remains unpaid. *Imex Intl. v. Wires Engineering*, 261 Ga. App. 329, 331-332 (1) (a) (583 SE2d 117) (2003). Yellowbook presented testimony and authenticated invoices that established the existence of the debt, which Buffa does not challenge.

its meaning. If, however, the contract is unclear, we attempt to resolve the ambiguity by applying the rules of contract construction. Where the contract remains ambiguous even after we apply the rules of construction, then the parties' intent must be determined by the factfinder.

(Footnotes omitted.) *Global Ship Systems, LLC v. Continental Cas. Co.*, 292 Ga. App. 214, 215-216 (1) (663 SE2d 826) (2008).

Here, an examination of the referenced contract language makes clear that Buffa is a party to the contract and is, therefore, liable to pay debts owed thereunder. The language above and below the signature blocks of the relevant contracts reads as follows: "This is an advertising contract between Yellow Book and [printed company name] *and* [signature]," beneath of which is included the language, "[a]uthorized [s]ignature individually and for the [c]ompany." (Emphasis supplied.). The signature block also references Clause 15F, which provides that "[t]he signer of this agreement does, by his execution *personally and individually* undertake and assume the full performance thereof including payments of amounts due thereunder." (Emphasis supplied.). Consequently, the plain language of the subject contracts expressly identified Buffa as a party to the contract with a primary responsibility for payment. Notwithstanding Buffa's contention that he signed two of the contracts as an agent of Arctic Polar, he nevertheless agreed to be individually and jointly liable to pay the

5

debt. See *Grot*, supra, 317 Ga. App. at 795 (6) ("Even though one is acting in the capacity of agent and for the sole benefit of his principal, he may nevertheless by express undertaking bind himself personally.") (citation and punctuation omitted). See also *Yellowbook Sales and Distribution Company, Inc. v. Valle*, 84 A. 3d 1196, 1202-1203 (Conn. 2014) (evaluating advertising contracts similar to those at issue here and concluding that the signer, the president of a corporation, was individually and jointly liable for corporation's advertising debts).[3] Accordingly, the trial court properly concluded that Buffa was personally obligated to pay Arctic Polar's advertising debts.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*

---

[3] Since the language employed in the Yellowbook advertising contracts reflects that Buffa agreed to undertake a primary obligation to perform under the contact, we need not address his arguments regarding the Statute of Frauds. See *Schwab U.S.A., Inc. v. Perpetual Machine Co.*, 241 Ga. App. 13, 13-14 (1) (525 SE2d 719) (1999) ("A promise to pay the debt of another which is an original undertaking by which the promisor becomes primarily liable is not within the Statute of Frauds.").