**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 3, 2022**

# In the Court of Appeals of Georgia

A22A0748. GEORGIA GOVERNMENT TRANSPARENCY AND
  CAMPAIGN FINANCE COMMISSION v. NEW GEORGIA
  PROJECT ACTION FUND et al.

MILLER, Presiding Judge.

This is the Georgia Government Transparency and Campaign Finance Commission's ("Commission") second appearance before this Court in this ongoing dispute regarding alleged improper communications between the Stacey Abrams for Governor campaign and third-party nonprofit organizations. See *Ga. Govt. Transparency and Campaign Finance Comm. v. New Ga. Project Action Fund* ("*Commission I*"), 359 Ga. App. 32 (856 SE2d 733) (2021). In the case sub judice, the Commission appeals from the superior court's order granting in part and denying in part its motion to compel subpoena duces tecum to obtain documents and communications between the Abrams campaign and various third parties. On appeal,

the Commission argues that the superior court erred by (1) refusing to enforce its subpoenas as drafted, (2) limiting the scope of the subpoena to the AFG Group, Inc. /d/b/a Stacey Abrams for Governor ("AFG"), and (3) refusing to enforce the subpoena against New Georgia Project Action Fund/New Georgia Project ("NGP") and Fair Count f/k/a Third Sector Development ("Fair Count"). For the reasons set forth below, we affirm the superior court's order in part, and we reverse the order in part.

The record shows that the Commission is tasked with enforcing Georgia's Campaign Finance Act, and it is empowered to investigate failures to comply with the Act and to issue subpoenas to gather evidence in connection with its investigations.[1] AFG is Stacey Abrams' registered campaign with the Commission, and Fair Count is a nonprofit organization that is focused on protecting the integrity of the U.S. Census. The New Georgia Project and the New Georgia Project Action Fund "are affiliated but distinct nonprofit corporations that were formed in 2017 and share a similar mission of engaging people of color in the political process in Georgia." New Georgia Project initially began as a "project" of Fair Count, but the entities separated at some point in 2017 or early 2018. In August 2018, the Commission received a complaint that AFG had engaged in coordination with BLUE Institute Enterprises,

---

[1] See OCGA § 21-5-6.

Inc. ("BLUE"), a nonprofit organization and a political action committee, without filing the requisite disclosures. While investigating the complaint, the Commission discovered information that suggested that coordination had also supposedly occurred between AFG, NGP, and Fair Count, and the Commission subsequently sent these entities subpoenas for documents. In a letter to the Commission responding to the subpoena, AFG gave the Commission documents for two requests in the subpoena, but it stated that it "has not identified any documents deemed responsive" regarding 10 other items requested in the subpoena. AFG also informed the Commission of 9 emails involving NGP and 10 emails involving the chairperson of the Democratic Party of Georgia that would not be provided because AFG deemed those documents irrelevant to the investigation. NGP gave the Commission some documents pursuant to the subpoena, but as to two items requested in the subpoena, NGP responded that it "ha[s] not identified any documents responsive to [these] request[s]."[2] Fair Count's chief executive officer averred that Fair Count did not possess any documents requested in the subpoena.

---

[2] NGP also objected to two items in the subpoena, but the Commission does not challenge NGP's objection to those two items in this appeal.

The Commission subsequently filed a motion to compel subpoena duces tecum pursuant to OCGA § 9-11-37 (a) in Fulton County Superior Court, seeking an order to compel the appellees to comply with its subpoenas. The appellees filed their responses, and following a hearing, the superior court denied the motion after determining that it lacked jurisdiction over the matter. The Commission appealed, and this Court reversed the trial court's order and concluded that OCGA § 50-13-13 (b) gave the Commission authority to seek enforcement of its subpoenas in superior court. *Commission I*, supra, 359 Ga. App. at 37-38 (3). After another hearing on remand, the superior court granted the Commission's motion to compel subpoena duces tecum in part, and it denied the motion in part. Specifically, the superior court first determined that this Court's decision in *Commission I* required it to apply the Civil Practice Act in adjudicating the Commission's motion. The superior court then concluded that the Commission's subpoena to AFG was overbroad, and it narrowed the scope of documents that AFG was required to produce in response to the subpoena. As to NGP, the superior court denied the motion to compel in part because NGP responded that it did not have two of the items requested in the subpoena, and

4

that NGP gave the Commission other documents requested in the subpoena.[3] As to Fair Count, the superior court denied the motion to compel after determining that Fair Count had "fully responded" to the Commission's subpoena through the chief executive officer's sworn affidavit. We granted the Commission's application for a discretionary appeal, and this appeal followed.

In three related enumerations of error, the Commission argues that the superior court erred by refusing to enforce its subpoenas as drafted, limiting the scope of the subpoena to AFG, and refusing to enforce the subpoena against NGP and Fair Count. Specifically, the Commission argues extensively that administrative agencies enjoy

---

[3] The superior court also modified the scope of the subpoena that was issued to NGP. The Commission, however, does not challenge the portion of the superior court's ruling narrowing the scope of the subpoena to NGP. Instead, the Commission clearly argues in its appellate brief that "*the superior court erred in limiting the scope of the subpoena to the Abrams Campaign and in refusing to enforce the subpoenas to NGP and Fair Count and its order should be reversed.*" Thus, to the extent that the dissent contends that the Commission is also challenging the trial court's order narrowing the scope of the subpoena to NGP, that contention is not consistent with the arguments raised on appeal. The Commission, who is represented by the Attorney General of Georgia, has the knowledge and ability to raise its own arguments, and our Court has been clear that, "[a]s an intermediate appellate court, . . . *[i]t is not the function of this court to raise and decide issues not complained of by the parties.*" (Emphasis supplied.) *Cole v. State*, 211 Ga. App. 236, 237-238 (438 SE2d 694) (1993); see also *Grot v. Capital One Bank (USA), N.A.*, 317 Ga. App. 786, 792 (4) (732 SE2d 305) (2012) (stating that it is not the court's responsibility to make out a party's case or rewrite a pleading).

5

broad powers in their investigations and in the enforcement of their investigative subpoenas and that the trial court erred by limiting the scope of its subpoena. The Commission also argues that the trial court erred in applying the provisions of the Civil Practice Act to adjudicate its motion to compel. We conclude, however, that the question of the proper amount of deference that should be afforded to Georgia state administrative agencies in their investigations and in the enforcement of their investigative subpoenas must wait for another day. That is because we conclude that, regardless of the amount of deference due to the Commission's investigative power, and regardless of the applicability of the Civil Practice Act to the Commission's motion to compel, the superior court erred by modifying the subpoena as to AFG under OCGA § 9-11-37, but it did not err by refusing to enforce the subpoenas against NGP and Fair Count.

(a) As to the Commission's argument regarding AFG, the Commission argues that the trial court erred by modifying its subpoena to AFG pursuant to OCGA § 9-11-37 (d) (1). We agree and conclude that the superior court erred by modifying the subpoena to AFG under OCGA § 9-11-37.

The resolution of this claim involves the construction of statutes and "[w]e consider questions of statutory construction under a de novo standard of review."

6

(Citation omitted.) *Georgia-Pacific Consumer Products, LP v. Ratner*, 345 Ga. App. 434, 437 (1) (a) (812 SE2d 120) (2018). As we delve into a statutory construction analysis, we are mindful of the familiar principles that

> we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. This Court looks to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it. Where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning generally ends.

(Citations and punctuation omitted.) *Commission I*, supra, 359 Ga. App. 33 (2).

Here, the superior court modified the scope of the subpoena to AFG pursuant to OCGA § 9-11-37 (d) (1). That statute states in part:

> If a party or an officer, director, or managing agent of a party or a person designated under paragraph (6) of subsection (b) of Code Section 9-11-30 or subsection (a) of Code Section 9-11-31 to testify on behalf of a party fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers or objections to interrogatories submitted under Code Section 9-11-33, after proper service of the interrogatories, or fails to serve a written response to a request for inspection submitted under Code Section 9-11-34, after proper service of the request, the court in which the action

7

is pending on motion may make such orders in regard to the failure as are just; and, among others, it may take any action authorized under subparagraphs (b)(2)(A) through (b)(2)(C) of this Code section.

OCGA § 9-11-37 (d) (1). Those subsections authorize a trial court to enter:

(A) [a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; (B) [a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence; [or] (C) [a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

(Citation omitted.) *Dentistry For Children of Ga. v. Foster*, 362 Ga. App. 217, ___ (3) (867 SE2d 617) (2022).

The plain language of this statute reflects that it applies to situations where a party has failed to appear for a deposition, failed to serve answers or objections to interrogatories, or failed to serve a written response to a request for inspection, and it governs the imposition of sanctions in such instances. See *Heard v. Ruef*, 347 Ga. App. 1, 5 (2) (815 SE2d 607) (2018) ("Under Georgia law, OCGA § 9-11-37 governs

8

the imposition of sanctions for the failure to attend a deposition."); *Howard v. Alegria*, 321 Ga. App. 178, 189 (4) (c) (739 SE2d 95) (2013) ("Therefore, if a party wilfully and knowingly responds to discovery requests with false answers to interrogatories and/or with false statements unequivocally denying the existence of requested discoverable materials, the trial court is authorized to consider this a failure to respond under OCGA § 9-11-37 (a) (3), and, as a consequence, immediately sanction the party pursuant to OCGA § 9-11-37 (b) (2) (A) - (C) and (d) (1)."); *Resource Network Intl., Inc. v. Ritz-Carlton Hotel Co.*, 232 Ga. App. 242 (1) (501 SE2d 573) (1998) ("OCGA § 9-11-37 provides that a court may impose such sanctions against a defendant who wilfully fails to respond to discovery or who wilfully disobeys a court order compelling discovery."). While the statute allows for the trial court to impose sanctions for the failure to comply with discovery, there is no language in this statute that grants a superior court discretion to modify a subpoena for the production of documents. And we are not inclined to read such power into this statute when a separate statute, OCGA § 24-13-23, already governs a trial court's power to modify a subpoena. Thus, the trial court erred by relying on OCGA § 9-11-37 (d) (1) to modify the Commission's subpoena to AFG.

We also reject AFG's argument that the superior court's modification of the subpoena was proper under OCGA § 24-13-23 for two reasons. First, AFG did not argue below that this particular statute allows the superior court to modify a subpoena, and therefore its argument was not preserved for appellate review. See *Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 370 (3) (718 SE2d 532) (2011) ("An appellate court will not consider an issue raised for the first time on appeal, because the trial court has not had the opportunity to consider it.") (citation omitted). Second, even if AFG's claim had been preserved for appellate review, it would still not provide a basis to affirm the superior court's order. OCGA § 24-13-23 governs subpoenas for the production of evidence and provides:

> The court, upon written motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may:
>
> (1) Quash or modify the subpoena if it is unreasonable and oppressive; or
>
> (2) Condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the evidence.

(Emphasis supplied.) OCGA § 24-13-23 (b). Thus, it is clear that the plain language of the statute indicates that a *motion to quash must be made before a trial court may modify a subpoena and that the motion must be made prior to the time specified for compliance in the subpoena.* See *WellStar Kennestone Hosp. v. Roman,* 344 Ga. App. 375, 377 (810 SE2d 600) (2018) ("OCGA § 24-13-23 permits subpoenas for the production of evidence, which a trial court may, upon written motion, quash or modify if the subpoena is unreasonable and oppressive.") (citation and punctuation omitted.); *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 414 (2) (785 SE2d 72) (2016) (stating that OCGA § 24-13-23 gives the trial court discretion to modify a subpoena "*upon [a] timely motion to quash*") (citation omitted; emphasis supplied). Here, it is undisputed that AFG did not file a motion to quash at any point during the proceedings before the agency or the superior court.[4] Additionally, even

___

[4] AFG argued that it did not file a motion to quash because it had fully complied with the Commission's subpoena and because the other documents that it withheld are not relevant to Commission's investigation. But because the documents AFG withheld fall under the plain language of the subpoena, it was incumbent upon AFG to seek some form of affirmative relief from the subpoena if it did not wish to produce the documents. See, e.g., Ga. Comp. R. & Regs., r. 189-2-.07 (2) (b) ("If a person or entity to whom an administrative subpoena has been issued objects to the subpoena, such person shall file before the Commission a motion to quash the subpoena within ten (10) business days of receipt of the subpoena. . . .The Commission shall hear and rule upon the motion at its next regularly scheduled meeting or at a specially called meeting, and compliance with the subpoena shall be

11

if AFG's response in opposition to the Commission's motion to compel that it filed in the trial court could be construed as a motion to quash,[5] OCGA § 24-13-23 requires that the motion be filed prior to the time for production specified in the subpoena. In this case, the specified time for compliance with the subpoena was May 31, 2019, but AFG's response in this case was not filed until November 27, 2019. Therefore, even if AFG had preserved this claim for appellate review, it would still not provide a basis to affirm the superior court's order. Accordingly, we conclude that, regardless of the proper standard or deference that should be applied to an administrative agency's investigation or its investigative subpoenas, OCGA § 9-11-37 is not the proper mechanism to modify an investigative subpoena and the superior court therefore erred by modifying the Commission's subpoena to AFG under this statute.

(b) As to the Commission's arguments regarding NGP and Fair Count, the Commission argues that the superior court erred by not enforcing its subpoenas to

_____

stayed until a ruling by the Commission is made upon the motion.").

[5] See *Fiffee v. Jiggetts*, 353 Ga. App. 730, 734 (2) (839 SE2d 224) (2020) ("There is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance. . . .") (citation omitted). As to AFG's response letter that it initially sent to the Commission during the agency proceedings, we conclude that the letter does not constitute a motion under the Civil Practice Act or the Commission's own regulations. See Ga. Comp. R. & Regs., r. 189-2-.07 (2) (b).

NGP and Fair Count because their responses to the subpoenas do not clearly indicate that they do not possess any of the documents requested in the subpoenas. We disagree and conclude that the superior court did not err in this regard.

Here, the Commission issued subpoenas to NGP and Fair Count for items related to its investigation. As to the first two items of the Commission's subpoena to NGP, NGP provided a written response to the Commission that it "ha[s] not identified any documents responsive to [these] request[s]." Fair Count's chief executive officer provided a sworn affidavit stating that Fair Count "has no responsive communications from the relevant time period in its custody or control" regarding any of the items requested in the subpoena. Therefore, even under the most deferential standard that could be afforded to an administrative agency's investigation, in light of the entities' responses that they do not possess any of the requested documents, the trial court did not err by denying the Commission's motion to compel as to these entities because "[i]t is well settled that a person cannot be compelled to produce, under a subpoena, a document which is neither in his possession nor under his control." (Citation omitted.) *Acosta v. La Piedad Corp.*, 894 F3d 947, 951-952 (II) (8th Cir. 2018) (concluding that "the broad investigatory power" afforded to federal agencies does not entitle them to command parties to

produce evidence that is not in their possession); see also *Muff v. State*, 254 Ga. 45, 48 (4) (326 SE2d 454) (1985) (holding that the trial court did not err by refusing to enforce a subpoena where the parties did not have the evidence that was requested in the subpoena).

In sum, we affirm the portion of the superior court's order denying the Commission's motion to compel as to NGP and Fair Count. We reverse, however, the portion of the order denying the motion to compel as to AFG.

*Judgment affirmed in part and reversed in part. Rickman, C. J., concurs. Pipkin, J., concurs in part and dissents in part as to Divisions (a) and (b).*

A22A0748. GEORGIA GOVERNMENT TRANSPARENCY AND
CAMPAIGN FINANCE COMMISSION v. NEW GEORGIA
PROJECT ACTION FUND et al.


PIPKIN, Judge, concurring in part and dissenting in part.

There are four distinct legal issues involved in this appeal: (1) the narrowing of the subpoena directed at AFG; (2) the narrowing of the subpoena directed at NGP; (3) the sufficiency of NGP's response to the Commission's subpoena; and, (4) the sufficiency of Fair Count's response to the Commission's subpoena. As to issue one, I fully concur with the majority that the superior court erroneously narrowed the scope of the Commission's subpoena directed at AFG; likewise, as to issue four, I fully concur with the conclusion that the subpoena responses from Fair Count establish that it conducted a diligent search and determined that it does not possess any communications relevant to the Commission's subpoena. However, I disagree with the majority that the Commission is not challenging the narrowing of the NGP subpoena, and I further disagree that NGP's subpoena response was sufficient. As discussed below, I concur in part and dissent in part.

2

With respect to division (a), I disagree with the conclusion in footnote 3, namely, that the Commission has not challenged the modification of the subpoena issued to NGP. As an initial matter, the Commission's application for discretionary appeal – which this Court granted – expressly asked this Court "to review the superior court's refusal to enforce the Commission's *subpoenas* as drafted." Further, while the Commission's argument headings reference only the AFG subpoena, the Commission plainly argues in the body of their argument that the trial court erred by "limiting the scope of the *subpoenas*" and that the limitations imposed by the trial court were "never expressly sought in any of the *Appellees'* written pleadings." Thus, while not a model of clarity, the Commission's brief sufficiently puts the narrowing of the NGP subpoena before this Court. Such a conclusion is bolstered by NGP's brief, which expends considerable appellate real estate to address whether the trial court lawfully narrowed the NGP subpoena. Finally, and not least of which, it is difficult to imagine that the Commission would assert in the strongest terms possible that the trial court could not, as a matter of law, narrow the scope of the AFG subpoena but ignore the trial court's tailoring of the NGP subpoena. Accordingly, I concur in division (a) to the extent that we reverse the narrowing of the AFG subpoena but dissent to the extent that we conclude that the Commission is not *also* challenging the limiting of

3

the NGP subpoena. Consequently, for the reasons explained in division (a) of the majority opinion, I conclude that the trial court also erred when it narrowed the NGP subpoena.

(b) With respect to division (b), I agree that the record shows that Fair Count adequately responded to the relevant subpoena; indeed, the response reflects that Fair Count conducted a diligent search and determined that it does not have any communications relevant to the Commission's subpoena. I cannot, however, say the same for the subpoena response from NGP, which merely states that NGP "review[ed] documents and records" and did "not identif[y] any documents responsive to this request." As an initial matter – irrespective of whether we agree on the sufficiency of NGP's response – the majority misses the mark by concluding that NGP's response can be understood to mean *only* "that [NGP does] not possess any of the requested documents." NGP's response to the subpoena merely reflects that NGP has not "identified" any documents; it does not necessarily follow that NGP does not possess the requested documents. As the Commission argues in its brief, NGP's response is so porous that the response could mean that NGP has "diligently searched their records and found no records responsive to the

subpoena" or "it could also simply mean that [NGP] ha[s] not identified any documents because [NGP] ha[s] not undertaken a search for them."

The ambiguity of this response becomes more apparent when compared to the responses found in the cases cited by the trial court in its order. Notably, all of the decisions cited by the trial court involve *concrete* and express responses to a request for the production of things. See *Simon v. Murphy*, 350 Ga. App. 291, 296-297 (2) (829 SE2d 380) (2019) (motion to compel properly denied where party representative expressly stated it had searched the relevant repository – a binder – and that it contained no record of similar incidents); *Hayward v. Kroger Co.*, 317 Ga. App. 795, 798 (2) (b) (733 SE2d 7) (2012) (motion to compel properly denied where store manager expressly stated that "no videotape camera recorded the incident itself"); *Nichols v. Georgia Television Co.*, 250 Ga. App. 789, 791 (2) (552 SE2d 550) (2001) (motion to compel properly denied where party responded "by stating that *the only* videotape in its possession was a copy of the broadcasts" that the requesting party was granted permission to review). Here, when the responses of Fair Count and NGP are put side by side, the contrast is stark, and, in my judgment, it becomes apparent that NGP's responses are lacking. Accordingly, I concur with division (b) of the majority opinion to the extent that we conclude that Fair Count's subpoena responses

are sufficient but dissent to the extent that we conclude that NGP's responses are sufficient; I conclude that the trial court abused its discretion when it determined that NGP had sufficiently responded to the Commission's subpoena, and I would remand for the trial court to enforce the subpoena as issued.

Accordingly, for the reasons explained above, I concur in part and dissent in part.